IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,           )  No. 08 CR 453
                                    )
            Plaintiff,              )  Chicago, Illinois
                                    )  June 17, 2009
                                    )  2:55 o'clock p.m.
    -vs-                            )
                                    )
                                    )
BRANDON ELLINGTON,                  )
                                    )
            Defendant.              )

TRANSCRIPT OF PROCEEDINGS - PLEA
BEFORE THE HONORABLE WAYNE R. ANDERSEN

APPEARANCES:

For the Plaintiff:        HON. PATRICK J. FITZGERALD
                          United States Attorney, by
                          MR. DANIEL MAY
                          Assistant United States Attorney
                          (219 S. Dearborn Street
                          Chicago, Illinois 60604)

For the Defendant:        MR. CHARLES L. NESBIT
                          105 West Madison
                          Suite 700
                          Chicago, Illinois 60602

Court Reporter:           ROSEMARY SCARPELLI
                          219 South Dearborn Street
                          Room 1412
                          Chicago, Illinois 60604
                          (312) 435-5815

THE COURT: USA versus Ellington.

THE CLERK: Yes.

THE COURT: 8 CR 453-9.

MR. NESBIT: Good morning.

THE COURT: Thank you for your patience.

MR. NESBIT: Good morning, your Honor, Charles R. Nesbit on behalf of the defendant Randall Ellington who is present in court.

THE COURT: Good afternoon.

THE COURT: Mr. Ellington, could you raise your right hand.

(Defendant sworn.)

THE COURT: Have you, during the last two days, had any alcohol, drugs or medication or anything that would make it difficult for you to understand what we are doing?

THE DEFENDANT: No.

THE COURT: Okay. I am going to find that you are competent to enter into a plea.

And as you heard me say with Mr. Mason, it is important -- also you have a great lawyer. If -- if you need to pause to ask him a question or me a question, you are welcome to do that. Okay?

THE DEFENDANT: Okay.

THE COURT: Mr. May, what are the charges against this particular -- is this a -- is there a plea agreement?

MR. MAY:  No, there is not, Judge.

MR. NESBIT:  Blind plea, your Honor.

THE COURT:  What are the charges against this defendant and what evidence would you have to support those charges if the case were to go to trial?

MR. MAY:  Judge, the defendant will be pleading to Counts 1, 5 and 17 of the indictment.  Count 1 is a charge of wire fraud.  Count 5 is a charge of wire fraud.  And Count 17 is a charge of bank fraud.

The wire fraud has a penalty of up to 30 years imprisonment and a fine of up to $1 million because it is affecting a financial institution.  Bank fraud again is a -- up to 30 years imprisonment and up to fine of $1 million because of the type of -- of that particular offense. Therefore, the defendant, if convicted of these offenses, could be sentenced to a total of approximately -- well, up to 90 years with a $3 million fine and placed on a period of supervised release in excess of three years.  Judge, that would be the statutory penalties that the defendant would face.

The defendant, by entering a plea to these three counts, in part of the scheme that he is with with the other 21 defendants in this case, the defendant was a loan officer. In -- in this scheme he took part in approximately the securing and issuing of approximately 28 loans.  The loss

amount or the amount of those loans was approximately $15 million. And the loss to date that has been calculated by the Government is $4,664,000.00.

The evidence, if the Government were to proceed to trial, would indicate that the defendant is a licensed loan originator in the State of Illinois. He had received training as to the laws and the rules that govern loan origination. At the time of the scheme he had been employed with several different mortgage broker companies, including Chicago Realty Network, First Capital Mortgage, priority -- First Priority Mortgage, as a -- as a mortgage loan officer. He had been a loan officer since approximately 1999.

He met the defendant Bobby Brown in approximately 2005. He knew and was aware that Brown was involved in real estate and owned several companies. The defendant also was aware that individual co-defendant Gwen Jackson owned one of these companies that was associated with Brown. And Brown also had a business partner that the defendant dealt with by the -- by the name of Barry Adams.

During the course of the scheme that the defendant was involved in, he was referred by either Adams Brown or Gwen Jackson, individuals that he termed investors. These investors were seeking money to pour -- or financing to secure properties. He did approximately 28 of these transactions involving either Bobby Brown himself or Brown's

investors. These investors purchased the properties and kept them for a short period of time.

In addition to that, as part of the scheme, Brown had another co-defendant, Leslie Love, the realtor who had handled reselling of the properties that Bobby Brown's investors purchased.

Specifically when the defendant started doing loans for Bobby Brown and his nominees, he was -- agreed originally that he would be paid a $5,000.00 bonus per real estate deal he closed. Brown gave him approximately three payments of 5,000 each by check from one of the companies, Chicago Global, for the real estate deals.

During this period of time, in addition to that, the evidence would show that as the loan officer the defendant was specifically charged in the indictment with the three properties. Count 1 involves a property that is located at 4830 West Sligo Way, Country Club Hills, Illinois. The purchaser, the nominee of this, was co-defendant Prentice Mason. This loan was in an amount in excess of $500,000.00.

But as part of this scheme the preparation of the documents indicated that Mason had inflated income, that this was going to be the primary source or primary place of residence, that there was false rental income attributable to Mason, that there was no disclosure of payments made to Mason, Brown or any of the associates and there was no

disclosure to -- to anybody that Mason had in fact during that time span purchased several other properties.

As part of this particular execution of the scheme there was, on or about June 30th of 2006 at Matteson, Illinois, in the Northern District of Illinois, a wire transfer which was -- in which approximately $428,930.00 from the Deutsche Bank account held in the name of Accredited Home Lenders in Santa Ana, California was wired to American Charter Bank in Schaumburg, Illinois for the credit of Law Title Insurance Agency which transferred the proceeds of the mortgage loan to Mason for the purchase of the residence at 4830 West Sligo Way, Country Club Hills, Illinois, this in violation of Title 18, Section 4 -- 1343.

In addition to that, Judge, in Count 5 to which the defendant is pleading guilty there was the purchase of property in this scheme at the location of 11243 Abbey Road, and as part of the evidence it would show that on August 16th of 2006 at Palos Hills, in the Northern District of Illinois, the defendant prepared and executed certain documents in the purchase of this property and that as part of this executing of the scheme there was a transfer by wire communications in interstate commerce a transfer of funds in the amount of $505,802.00 from the Deutsche Bank account held in the name of Accredited Home Lenders in Santa Ana, California to Archer Bank in Chicago, Illinois for the credit of Condor Title

Services. This transfer of funds represented proceeds of a mortgage loan issued to a buyer for the purchase of the residence located at 11243 Abbey Road in Mokena, Illinois. This as part of the scheme was done in violation of 18 U.S.C. Section 1343.

As to this particular property, the loan documents indicated that there was increased or elevated income. There was false statements as to rental income by the buyer. There was nondisclosure that this particular buyer had previously purchased other properties and owned other properties. There was nondisclosure of funds as to the -- the distributing of funds to the buyer and also to Bobby Brown in this particular case.

And finally, Judge, as -- as to the last count which is Count 17, the -- as part of this scheme the defendant, along with another individual by the name of co-defendant Calvin Townsend, executed as part of this scheme -- the defendant on or about October 23rd of 2006 executed loan documents in this particular case. At this time again there was false occupancy claims by the buyer. There was overstated income on the loan documents. There was overstated rental income in the documents. There were understated liabilities which meant that there was no disclosures that this particular buyer had bought other properties. And there was undisclosed kickbacks or payments

made to the investor for the buyer and -- and Brown.

All of these statements and false statements or omissions were material in all three counts and were relied upon by the mortgage or loan companies in order to provide these loans to the various nominees.

These -- that would -- that would be essentially the facts as set forth, Judge.

THE COURT: Counsel, are there any facts that you want to contradict at this point in time?

MR. NESBIT: No, your Honor, we stipulate to those facts, but it should be known to the Court that Mr. Ellington, when confronted with these facts, immediately confessed his part of the scheme. In fact, he made a written statement unsolicited and gave it to the Government. And he is also prepared to testify at trial and at the Grand Jury for any upcoming proceeding.

THE COURT: And as you heard with respect to the previous defendant, that could lead to a Government request that the sentence be reduced. And, obviously, it has an impact on me in any event. So after we do the Guideline calculations, your truthfulness, cooperation, acceptance of responsibility all make a difference in terms of the sentence.

That would be sufficient in order to enter a judgment of guilty with respect to the counts with which you

are charged. It is important that I understand that you understand that you have various rights, including right to a trial by a jury or a judge without a jury if you, the judge and the Government were to agree upon that.

At that trial you would be presumed innocent. There -- the Government would have to prove you guilty beyond a reasonable doubt.

If it were a jury case, they would be instructed that they had to consider each count separately and a jury could not find you guilty or not guilty unless they determined after hearing all the evidence unanimously that you were guilty of a charge or not guilty of a charge with respect to a particular count. If the case were being heard by a judge, a judge would have to make the same kind of determination.

At trial you wouldn't have to prove anything. The Government has the burden of coming forward with evidence. You can confront their witnesses. Your lawyer could cross-examine them. But if you wanted to, you could present witnesses on your own behalf. If witnesses didn't want to come, you could use the Court's subpoena power to compel witnesses to come to court.

At trial you would not have to testify and no inference of guilt could be drawn for that -- from that. But if you wanted to, you could testify on your own behalf.

Do you understand by proceeding guilty you are waiving the exercise of all these rights?

THE DEFENDANT: Yes.

THE COURT: Also, if we were to go to trial and you were found guilty and your rights were not properly recognized during that trial, that could give you a basis for appealing the trial.

Do you understand you are waiving appellate issues that might have been arisen had the case gone to trial?

THE DEFENDANT: Yes.

THE COURT: If you and your lawyer advise me that no threats, promises or representations have been made in order to get you to plead guilty, then I will accept the plea. I will set October 15th at 11:00 as a sentencing date so we can get a presentence investigation, although I would assume that you wouldn't get sentenced until after that, probably until the case is over so that we can judge your -- the value of your cooperation then.

Is that true, counsel, that --

MR. NESBIT: Yes, we acknowledge that there have been no representations or threats made by Government.

THE COURT: Mr. Ellington, is that true?

THE DEFENDANT: Yes.

THE COURT: And it is a voluntary plea on your part?

THE DEFENDANT:  Yes.

THE COURT:  Should we also just set that date?  Is that all right?

MR. NESBIT:  Yes, your Honor.  I would like to waive appearing before the Probation Department today because it is so late an hour and I have another engagement.

THE COURT:  Fine.

MR. NESBIT:  And I would like to make an appointment --

THE COURT:  If you would call them that would be great.

MR. NESBIT:  -- later in the process.

THE COURT:  I want to thank you both for your courtesy in sticking around.

MR. NESBIT:  Thank you, Judge.

THE COURT:  Thank you.

Thanks, Mr. May.  We will be hearing from you about other matters, I am sure.

(Which were all the proceedings heard.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Rosemary Scarpelli/          Date:  January 11, 2010